**Doris CHEATHAM, Appellant (Plaintiff Below),**

v.

**Michael POHLE, Appellee (Defendant Below).**

No. 40S01–0209–CV–471.

Supreme Court of Indiana.

May 30, 2003.

---

Thomas J. Lantz, David W. Paugh, Seymour, Indiana, Attorneys for Appellant.

Andrew M. Auersch, Timothy J. O'Connor, Indianapolis, Indiana, Attorneys for Appellee.

David W. Stone, Indiana Trial Lawyers Association, Anderson, Indiana, John C. Trimble, Anthony M. Eleftheri, A. Richard M. Blaiklock, Insurance Institute of Indiana, Indianapolis, Indiana, Attorneys for Amicus Curiae.

Steve Carter, Attorney General, Scott A. Kreider, David L. Steiner, James B. Martin, Deputy Attorneys General, Indianapolis, Indiana, Attorneys for State of Indiana.

## ON PETITION FOR TRANSFER

BOEHM, Justice.

Indiana's punitive damages allocation statute provides that an award of punitive damages is to be paid to the clerk of the court, and the clerk is to pay seventy-five percent of it to the State's Violent Crime Victims' Compensation Fund and twenty-five percent to the plaintiff. We hold the

statute does not create an unconstitutional taking of property. Nor does it place a demand on an attorney's particular services in violation of the Indiana Constitution.

## Factual and Procedural Background

After Doris Cheatham and Michael Pohle divorced in 1994, Pohle retained photographs he had taken of Cheatham in the nude as well as photos of the two engaged in a consensual sexual act. In early 1998, Pohle made photocopies of the photographs, added Cheatham's name, her work location and phone number, her new husband's name, and her attorney's name, and proceeded to distribute at least sixty copies around the small community where both he and Cheatham still lived and worked. Cheatham sued, alleging invasion of privacy and intentional infliction of emotional distress, and the jury awarded her $100,000 in compensatory damages and $100,000 in punitive damages.

Indiana Code section 34–51–3–6, enacted in 1995, provides:

(a) Except as provided in IC 13–25–4–10, when a judgment that includes a punitive damage award is entered in a civil action, the party against whom the judgment was entered shall pay the punitive damage award to the clerk of the court where the action is pending.

(b) Upon receiving the payment described in subsection (a), the clerk of the court shall:

(1) pay the person to whom punitive damages were awarded twenty-five percent (25%) of the punitive damage award; and

(2) pay the remaining seventy-five percent (75%) of the punitive damage award to the treasurer of state, who shall deposit the funds into the violent crime victims compensation fund established by IC 5–2–6.1–40.

Ind.Code § 34–51–3–6 (1998).

Although Cheatham did not raise any constitutional issue in the trial court, she appealed the judgment on two grounds. She argues that the statute violates the Takings Clauses found in both the Indiana Constitution and the Fifth Amendment of the United States Constitution. She also contends that the statute demands an attorney's "particular services" without just compensation in violation of Article I, Section 21 of the Indiana Constitution and that the statute imposes a tax upon her and her attorney in violation of Article X, Section 1 of the Indiana Constitution.

Pohle cross-appealed, arguing that Indiana does not recognize the tort of Public Disclosure of Private Facts, and that the trial court erred when it allowed the jury to return a punitive damages award without instructing it to consider Pohle's financial condition.

The Court of Appeals addressed the merits of Cheatham's claims and found that there was no taking in violation of the Fifth Amendment, but concluded that the statute violates Article I, Section 21 of the Indiana Constitution by placing a demand on an attorney's "particular services" without just compensation. *Cheatham v. Pohle*, 764 N.E.2d 272, 277 (Ind.Ct.App. 2002). The Court of Appeals rejected Pohle's cross-appeal on the ground that the issues were first raised in a post-trial motion to correct error, and were not preserved for appeal. *Id.* at 274–75, n. 1. After the Court of Appeals decision, the State filed a motion to intervene, requested party status, and tendered a petition for rehearing. The Court of Appeals granted the motion to intervene, but denied rehearing. *Cheatham v. Pohle*, 2002 Ind.App. LEXIS 1110 (May 28, 2002). We granted the State's petition to transfer.

We summarily affirm the Court of Appeals holding that Pohle preserved no issue for appeal. The only remaining issues are Cheatham's challenges to the constitutionality of the punitive damages allocation statute. These present only questions of law.

## I. Punitive Damages in Indiana

■ In assessing the claim that the allocation statute takes property without just compensation, it is essential to understand the nature of a claim for punitive damages. The purpose of punitive damages is not to make the plaintiff whole or to attempt to value the injuries of the plaintiff. Rather, punitive damages, sometimes designated "private fines" or "exemplary damages," have historically been viewed as designed to deter and punish wrongful activity. As such, they are quasi-criminal in nature. *Cacdac v. West*, 705 N.E.2d 506, 510 (Ind.Ct.App.1999) (punitive damages may be awarded upon a showing of a "quasi-criminal" state of mind or willful and wanton misconduct); *Mitchell v. Stevenson*, 677 N.E.2d 551, 564 (Ind. Ct.App.1997); *see also Smith v. Wade*, 461 U.S. 30, 59, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) (Rehnquist, J., dissenting) (citing *Huber v. Teuber*, 10 D.C. 484, 490 (1877)); Felix Forte, *Joinder of Civil and Criminal Relief in Indiana*, 7 Notre Dame Law. 499, 501 (1932).

■ As a matter of federal law, state legislatures have broad discretion in authorizing and limiting the award of punitive damages, just as they do in fashioning criminal sanctions. *BMW of N. Am. Inc. v. Gore*, 517 U.S. 559, 568, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Victims in a criminal case have no claim to benefit from criminal sanctions. *United States v. Newman*, 144 F.3d 531, 538 (7th Cir.1998) (criminal law imposes punishment on behalf of all of society, but equitable payments of restitution inure only to specific victims of criminal conduct and do not possess a similarly punitive character); Charlton T. Howard III, *Note: Booth v. Maryland Death Knell for the Victim Impact Statement?*, 47 Md. L.Rev. 701, 738, n. 93 (1988) (the purpose of criminal punishment is to vindicate the interests of society as a whole, not the individual victim) (citing *Tison v. Arizona*, 481 U.S. 137, 149, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987)); Linda Curtis, *Damage Measurements for Bad Faith Breach of Contract: An Economic Analysis*, 39 Stan. L.Rev. 161, 178 (1986) (for punishment and deterrence purposes, criminal sanctions are more appropriate since they cannot provide a windfall to victims). For the same reason, it has been consistently held that civil plaintiffs have no right to receive punitive damages. *Durham v. U–Haul Int'l*, 745 N.E.2d 755, 762 (Ind.2001); *Reed v. Central Soya Co.*, 621 N.E.2d 1069, 1076 (Ind. 1993); *Travelers Indem. Co. v. Armstrong*, 442 N.E.2d 349, 362–63 (Ind.1982); *Indiana & Michigan Electric Co. v. Terre Haute Industries, Inc.*, 507 N.E.2d 588, 611–12 (Ind.Ct.App.1987); *Miller Pipeline Corp. v. Broeker*, 460 N.E.2d 177, 185 (Ind. Ct.App.1984); *Farm Bureau Mut. Ins. Co. v. Dercach*, 450 N.E.2d 537, 541 (Ind.Ct. App.1983).

■ To the extent punitive damages are recoverable, they are a creature of the common law. *Forte v. Connerwood Healthcare, Inc.*, 745 N.E.2d 796, 800 (Ind. 2001); Forte, 7 Notre Dame Law. at 501. As we have repeatedly held in other contexts, the legislature is free to create, modify, or abolish common law causes of action. *McIntosh v. Melroe*, 729 N.E.2d 972, 977 (Ind.2000); *Martin v. Richey*, 711 N.E.2d 1273, 1283 (Ind.1999). And, as a matter of federal constitutional law, no person has a vested interest or property right in any rule of common law. *Munn v. Illinois*, 94 U.S. 113, 134, 24 L.Ed. 77

(1876). As a result, the General Assembly is free to eliminate punitive damages completely, as other states have done, and also has wide discretion in modifying this "quasi-criminal" sanction. Indeed, several jurisdictions have chosen not to recognize punitive damages as an acceptable award in any form.[1]

Indiana, like several other states, has chosen an intermediate ground permitting juries to award punitive damages and thereby inflict punishment on the defendant, but placing restrictions on the amount the plaintiff may benefit from the award. The facts warranting punitive damages must be established by clear and convincing evidence. Ind.Code § 34–51–3–2 (1998). Whether punitive damages may be awarded is usually a question of fact. *Reed,* 621 N.E.2d at 1076.

In sum, Indiana law recognizes a right to assert a claim to be compensated for a cognizable wrong and to recover on that claim to the extent the law allows. But a number of consequences flow from the fundamentally different nature of a claim to punitive damages. The financial condition of the defendant is relevant, *Hibschman Pontiac, Inc. v. Batchelor,* 266 Ind. 310, 317, 362 N.E.2d 845, 849 (1977), which it would not be if the goal were to compensate the plaintiff, as opposed to

deterring or punishing the defendant.[2] Proof is required by a clear and convincing standard rather than a preponderance of the evidence standard. I.C. § 34–51–3–2 (1998). For our purposes, the essential point is that because punitive damages do not compensate the plaintiff, the plaintiff has no right or entitlement to an award of punitive damages in any amount. Unlike a claim for compensatory damages, the trier of fact is not required to award punitive damages even if the facts that might justify an award are found.[3] *Hibschman Pontiac, Inc.,* 266 Ind. at 317, 362 N.E.2d at 849.

## II. Claims Under State and Federal Taking Clauses

Article I, Section 21 of the Indiana Constitution includes a prohibition against the taking of property without just compensation. The Fifth Amendment to the United States Constitution includes the same proscription, and applies to the states through the Fourteenth Amendment. *Chicago, Burlington & Quincy RR. Co. v. City of Chicago,* 166 U.S. 226, 238–39, 17 S.Ct. 581, 41 L.Ed. 979 (1897). This Court ordinarily resolves questions that arise under the Indiana Constitution by "examining the language of the text in the context of the history surrounding its

---

1. In Nebraska punitive damages are constitutionally prohibited. *Distinctive Printing and Packaging Co. v. Cox,* 232 Neb. 846, 443 N.W.2d 566, 574 (1989). In Louisiana, Massachusetts, New Hampshire, and Washington, punitive damages are permitted only if expressly authorized by statute. La. Civ.Code Ann. art. 2315 (West 1997); *Billiot v. BP Oil Co.,* 617 So.2d 28, 29–30 (La.Ct.App.1993); Mass. Gen. Laws Ann. ch. 106, § 1–106 (West 1998); N.H.Rev.Stat. Ann. § 507:16 (1986); Wash. Rev.Code Ann. § 64.34.100(1) (West 1994).

2. *Taber v. Hutson,* 5 Ind. 322, 324–25 (1854), originally took the view that the jury may not

consider the wealth of the defendant, but this is not the case in recent times. *State Farm Mut. Auto. Ins. Co. v. Campbell,* —— U.S. ——, ——, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003).

3. Consistent with the view that punitive damages are quasi-criminal in nature, punitive damages in Indiana were long viewed as imposing impermissible double jeopardy. *Eddy v. McGinnis,* 523 N.E.2d 737, 740 (Ind.1988) (citing *Taber,* 5 Ind. at 325); *Koerner v. Oberly,* 56 Ind. 284, 286–87 (Ind.1877); *Gosnell v. Indiana Soft Water Serv., Inc.,* 503 N.E.2d 879, 880 (Ind.1987). This common law doctrine was changed by statute in 1984. I.C. § 34–4–3–3 (1998).

drafting and ratification, the purpose and structure of our constitution, and case law interpreting the specific provisions." *Richardson v. State,* 717 N.E.2d 32, 38 (Ind.1999) (quoting *Ind. Gaming Comm'n v. Moseley,* 643 N.E.2d 296, 298 (Ind. 1994)). We look initially to the language of the Constitution. *McIntosh,* 729 N.E.2d at 983. Insofar as the Takings Clauses are concerned, the federal and state constitutions are textually indistinguishable. The federal Takings Clause of the Fifth Amendment reads "nor shall private property be taken for public use, without just compensation," and the Article I, Section 21 of the state constitution reads "no person's property shall be taken by law, without just compensation." There are subjects, notably double jeopardy and search and seizure, where the two constitutions have similar or identical language but have received different treatment by the courts.[4] Here, however, there is no difference in the terms "taken" or "property" found in both constitutions, and the courts have treated these issues as identical. *B & M Coal Corporation v. United Mine Workers of America,* 501 N.E.2d 401, 406 (Ind.1986) (deciding, under both Article I, Section 21 and the Fifth Amendment simultaneously, that a taking had occurred). Accordingly, the following discussion addresses both the state and federal Takings Clauses.

■ Both Article I, Section 21 of the Indiana Constitution and the federal Takings Clause provide that "no person's property shall be taken by law, without just compensation." Only "property" is protected from taking under either clause. It has long been recognized that an accrued cause of action may be a property right. *Dague v. Piper Aircraft Corp.,* 275

Ind. 520, 529, 418 N.E.2d 207, 213 (Ind. 1981); *Gnerlich v. Gnerlich,* 538 N.E.2d 285, 288 (Ind.Ct.App.1989). If the law recognizes a wrong, an injured person has the right to be compensated for an injury. But it is equally well settled in Indiana and elsewhere that no one has a right to recover punitive damages, however outrageous the conduct of the offender. *Durham v. U–Haul Int'l,* 745 N.E.2d 755, 764 (Ind. 2001); *Orkin Exterminating Co. v. Traina,* 486 N.E.2d 1019, 1022 (Ind.1986); *see also Gordon v. State,* 608 So.2d 800, 801 (Fla.1992); *State v. Moseley,* 263 Ga. 680, 436 S.E.2d 632, 634 (1993); *Shepherd Components, Inc. v. Brice Petrides–Donohue & Assoc., Inc.,* 473 N.W.2d 612, 619 (Iowa 1991).

Specifically, any interest the plaintiff has in a punitive damages award is a creation of state law. The plaintiff has no property to be taken except to the extent state law creates a property right. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The Indiana legislature has chosen to define the plaintiff's interest in a punitive damages award as only twenty-five percent of any award, and the remainder is to go to the Violent Crime Victims' Compensation Fund. The award to the Fund is not the property of the plaintiff. Nor is her prejudgment claim a property interest. Rather, the claim she had before satisfaction was, pursuant to statute, a claim to only one fourth of any award of punitive damages. As a result, there is no taking of any property by the statutory directive that the clerk transfer a percentage of the punitive damages award to the Fund.

■ A claim for punitive damages can be sustained only if it is accompanied by a

---

**4.** *See Richardson v. State,* 717 N.E.2d 32 (Ind. 1999) (double jeopardy); *Brown v. State,* 653

N.E.2d 77 (Ind.1995) (search and seizure).

viable claim for compensatory damages. *Sullivan v. Am. Cas. Co.*, 605 N.E.2d 134, 140 (Ind.1992); *Allstate Ins. Co. v. Axsom*, 696 N.E.2d 482, 485 (Ind.Ct.App.1998); *Bright v. Kuehl*, 650 N.E.2d 311, 317 (Ind. Ct.App.1995). Cheatham thus claims that an award for punitive damages is "connected to" a claim for actual damages. From this, Cheatham reasons that because she has a right to compensatory damages, she must have a right to punitive damages as well. This confuses necessary preconditions with sufficient ones. To be sure, a claim for compensatory damages is a prerequisite to a claim for punitive damages, but it does not follow that it is adequate to confer a right to that claim.

Several states have statutes that allocate punitive damages to the state in some form similar to the Indiana version. *BMW of N. Am., Inc.*, 517 U.S. at 616, 116 S.Ct. 1589, App. to Opinion of Ginsburg, J. (Ginsburg, J., dissenting); Charles F.G. Parkinson, *Note: A Shift in the Windfall: An Analysis of Indiana's Punitive Damages Allocation Statute and the Recovery of Attorney's Fees Under the Particular Services Clause*, 32 Val. U. L.Rev. 923, 928 (1998). Of the state courts that have addressed the issue, only the Colorado Supreme Court has found an unconstitutional taking of property, while statutes in Alaska, Oregon, Georgia, Florida and Iowa have been upheld.

*Evans v. State*, 56 P.3d 1046, 1058 (Alaska 2002), held that Alaska Statute section 09.17.020(j) (2002), which allocates fifty percent of a punitive damages award to the state general fund, does not effect a taking because it amounts to a cap on the amount of punitive damages that may be awarded before any award is rendered to a plaintiff. The Alaska Supreme Court determined that such a cap is consistent with the legislature's power to limit or abolish punitive damages. In *DeMendoza v. Huff-*

*man*, 334 Or. 425, 51 P.3d 1232, 1247 (2002), the Oregon Supreme Court found that Oregon Revised Statute section 18.540 (2001), which allocates sixty percent of punitive damages awards to the state, also does not effect a taking because a party has no prejudgment property interest in a punitive damages award. *Mack Trucks v. Conkle*, 263 Ga. 539, 436 S.E.2d 635, 639 (1993), also found that Georgia Code Annotated section 52–12–5.1(e)(2) (1989), allocating seventy-five percent of punitive damages in a product liability case to the state, does not amount to a taking because the societal interest in deterrence of wrongful conduct is better served this way and the benefit belongs to society as a whole. In *Gordon v. State* and *State v. Moseley*, the Florida and Georgia Supreme Courts both found as we do that there is no vested property right in an award of punitive damages. The Florida court found Florida Statute Annotated section 768.73(2)(b) (Supp.1986) to be constitutional. *Gordon*, 608 So.2d at 802. It also upheld subsection 768.73(4), providing that attorney's fees, "if payable from the judgment, shall, to the extent that they are based on the punitive damages, be calculated based only on the portion of the judgment payable to the claimant." *Id.* In *Shepherd Components*, the Iowa Supreme Court held that under Iowa Code section 668.1(2)(b) (1989), there is no vested right to an award of punitive damages. *Id.* at 619.

Cheatham relies on *Kirk v. Denver Pub. Co.*, 818 P.2d 262 (Colo.1991), for the proposition that the statutory requirement that a portion of the punitive damages judgment be paid to the state victims' fund constitutes an unconstitutional taking. We do not agree with the rationale in *Kirk*, and also conclude that the Colorado statute addressed in that case is materially different from the Indiana version. The Colorado statute required that the plain-

tiff, after having received the full judgment from the defendant, pay thirty percent of the proceeds into a general state fund. *Id.* at 263. The statute at issue in *Kirk* thus purported to vest the state's interest in the award only after the judgment had been paid to the plaintiff. *Id.* at 266. The Colorado Supreme Court took the view that the state therefore had no interest in the award before it was paid to the plaintiff and the award became vested property of the plaintiff. The effect of the statute was thus viewed as a taking of property received by the plaintiff. To avoid this issue, the Indiana statute provides that the defendant pays the entire amount of the punitive damages award to the clerk of the court who then distributes twenty-five percent of the award to the plaintiff. Until this occurs, the plaintiff receives nothing from the judgment of punitive damages.

We also disagree with the underlying rationale of *Kirk*, which cited *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980), for its conclusion that the Colorado statute amounted to a taking of the plaintiff's private property. In *Beckwith*, the U.S. Supreme Court held that because interest earned on an interpleader fund was incidental to the claimant's ownership in that account, the government could not deprive the claimant of that interest without initiating an unconstitutional taking in violation of the Fifth Amendment. *Id.* at 162, 101 S.Ct. 446. The case stands for the proposition that the right to receive interest on one's property is one's property. But for the reasons already discussed, under either the federal or the Indiana Takings Clause, there is no property right in a claim for punitive damages. Rather, consistent with their punitive nature, punitive damages are akin to a fine exacted by the government of Indiana to deter and punish wrongdoers. Requiring payment

of this fine to a victim compensation fund rather than awarding it to a private citizen is well within the state legislature's authority.

Finally, Cheatham contends that the statute has the following "deficiencies" and therefore constitutes a taking for four different reasons:

(1) the statute does not expressly address the issue of whether or how a punitive damages award may be compromised;

(2) it does not address how payments of a judgment in installments are to be allocated between compensatory and punitive damages;

(3) it does not address whether the plaintiff is the only mechanism to enforce a judgment, and if that occurs, whether or how the plaintiff is to be compensated; and,

(4) it encourages an attorney to break obligations to the client by reducing the fee incentive.

The first three of these are answered by the absence of any property right in the judgment. If there is none, there is no unconstitutional taking, irrespective of the resolution of these other issues. The last contention presents no issue of substance. Many legal doctrines serve to reduce the potential recovery by a civil plaintiff. The lawyer and the client get to play the hand the legislature deals them, no more and no less. If the claim is for compensatory damages plus one fourth of any punitive damages award, the fee agreement and the expectations of both lawyer and client must adjust accordingly.

## III. Uniform and Equal Taxation

■ Cheatham argues that the statute imposes a tax on her and her attorney in violation of Article X, Section 1 of the Indiana Constitution. We disagree. Arti-

cle X, Section 1 provides: "The General Assembly shall provide, by law, for a uniform and equal rate of property assessment and taxation and shall prescribe regulations to secure a just valuation for taxation of all property, both real and personal." Only the taxation of "property" is governed by this constitutional provision. For the reasons stated above, Cheatham has no property interest in the punitive damages award. If Cheatham has no interest, whatever claim her attorney has to be compensated by her is a matter of contract between her and the attorney. The law defines the interest Cheatham had, and her attorney's rights can be no greater than hers. We find no serious Article X, Section 1 issue presented by section 34-51-3-6.

## IV. Demand on Particular Services

 Unlike the Fifth Amendment, in addition to its Takings Clause, Article I, Section 21 of the Indiana Constitution also provides that "no person's particular services shall be demanded, without just compensation." This provision applies only if both a "person's particular services" are rendered and they have been "demanded" by the State. Cheatham contends that the effect of the statute is to demand her attorney's "particular services" without just compensation in violation of this provision. We agree that the attorney's services are "particular" as that term appears in the Indiana Constitution. *Bayh v. Sonnenburg,* 573 N.E.2d 398 (Ind. 1991), provided us with the following test to determine whether there has been a state demand of particular services: (1) particular services were performed, (2) on the State's demand, (3) without just compensation. *Id.* at 411. There is no dispute that attorneys' services may be "particular services" within the meaning of this provision. *Sholes v. Sholes,* 760 N.E.2d 156, 162 (Ind.2001); *Webb v.*

*Baird,* 6 Ind. 13 (1854). To be considered particular, services must be (1) historically compensated, and (2) something required of a party as an individual, as opposed to something required generally of all citizens. *Bayh,* 573 N.E.2d at 415–16. An attorney's services in a specific lawsuit meet that standard. *Sholes,* 760 N.E.2d at 162–63. But we find no demand in this arrangement. Cheatham engaged her attorney and the attorney agreed to represent her, all with no state intervention of any kind. In order for there to be a state demand on a person's particular services, there must be the threatened use of physical force or legal process that leads that person to believe that they have no choice but to submit to the will of the State. *Bayh,* 573 N.E.2d at 417. Here the attorney was free to accept or reject representing Cheatham on whatever terms the two would agree.

There is no express or implied requirement in the statute that any attorney represent any specific plaintiff. Nor does Cheatham have a right to an attorney in any case where punitive damages may arise. *Sholes,* 760 N.E.2d at 165. And no attorney may be compelled to represent a plaintiff to pursue punitive damages without compensation. *Id.* at 164. Nor is there any requirement that attorneys represent clients without receiving a fee. The statute limits the amount of the client's recovery. If the parties have a contingent fee contract that operates as a percentage of all amounts recovered by the plaintiff, it may serve to reduce the amount on which the attorney calculates the fee. But that presents no constitutional issue. In the first place, any effect of the statute on the fee is attributable to the fact that Cheatham and her attorney agreed to that arrangement. Second, even if, as a practical matter, a fee based on a percentage of all recovery is the only available arrange-

ment, the statute places no demand on the attorney's services.

In *Gorka v. Sullivan,* 671 N.E.2d 122 (Ind.Ct.App.1996), the Court of Appeals held that there was no state demand on the services of transportation carriers. In that case, the State requested the services of transportation carriers and offered them a contract outlining the fees they would receive for transporting Medicaid recipients. *Id.* at 131. The court held that the offering of the contract did not constitute a demand of the carriers' services, but was instead a request that the carriers had the option to accept or deny, so there was no unconstitutional demand. *Id.* The same is true here. Indiana Code section 34–51–3–6 is merely a limitation on the amount of recovery from a punitive damages award permitted to a plaintiff. If the decision is made to pursue punitive damages, attorneys and their clients do so with the statutory framework in place to restrain the value to them of any recovery. The statute makes no mention of attorneys or attorneys' fees and there is no implication that attorneys' services to anyone have been demanded or requested by this statute.

In sum, section 34–51–3–6 became effective in 1995. Cheatham and her attorney had notice of this statute when the suit against Pohle was filed in 1998. The attorney's fees were subject to that obstacle just like all other potential barriers to success in a contingent fee contract.

### Conclusion

Section 34–51–3–6 does not exact a taking of private property or place a demand on any attorney to undertake any representation. As a result, any judgment for an amount awarded as punitive damages is subject to the allocation required by section 34–51–3–6. The judgment of the trial court is affirmed.

SHEPARD, C.J., and SULLIVAN, J., concur.

DICKSON, J., dissents with separate opinion, in which RUCKER, J., concurs.

DICKSON, J., dissenting.

The punitive damages scheme enacted in 1995 sought to modify Indiana's common law regarding punitive damages by capping the maximum amount of a punitive damage award at three times the amount of compensatory damages or $50,000, whichever is greater, and by requiring seventy-five percent of the final award to be allocated for use by the Violent Crime Victims' Compensation Fund. Ind.Code §§ 34–51–3–5, –6. To facilitate these objectives, this scheme requires that the statutory cap and allocation be concealed from every jury considering a claim for punitive damages. I.C. § 34–51–3–3. There is no statutory requirement that the state pay any legal fees related to its share of the punitive damage award.

In declaring that the allocation required by Indiana Code § 34–51–3–6 does not constitute a taking of private property in violation of the Takings Clauses of our federal and state constitutions, the majority relies primarily upon its contention that punitive damage plaintiffs have no property right in a judgment awarding punitive damages. I disagree. A person's property interest in a judgment vests upon the entry of that judgment by the trial court, not upon the eventual payment of the judgment by the judgment debtor.

A judgment is a court's "final determination of the rights and obligations of the parties in a case." BLACK'S LAW DICTIONARY 846 (7th ed. 1999). A judgment for money is property. *Wilson v. Brookshire,* 126 Ind. 497, 506, 25 N.E. 131, 134 (1890); *Haynes v. Contat,* 643 N.E.2d 941, 943 (Ind.Ct.App.1994); *Browning v. Walters,*

616 N.E.2d 1040, 1047 (Ind.Ct.App.1993). I agree with the majority that a plaintiff's *prejudgment* claim of punitive damages is not a property interest, but I contend that it becomes a vested property interest upon the entry of a final judgment. The constitutional limitations upon the power of the legislature to interfere with rights established by a judgment have long been protected:

It is not within the power of a legislature to take away rights [that] have been once vested by a judgment. Legislation may act on subsequent proceedings, may abate actions pending, but when those actions have passed into judgment the power of the legislature to disturb the rights created thereby ceases.

*McCullough v. Virginia,* 172 U.S. 102, 123–24, 19 S.Ct. 134, 142, 43 L.Ed. 382, 390 (1898).

At the conclusion of the trial in this case, the jury here returned a verdict in favor of Doris Cheatham awarding her $100,000 in compensatory damages and $100,000 in punitive damages. The trial court thereafter entered judgment "in favor of the Plaintiff Doris Cheatham and against the Defendant Michael Pohle in the amount of Two Hundred Thousand ($200,000.00) Dollars." Record at 88. Upon this entry by the trial court, the judgment became the property of Doris Cheatham. I am convinced that Indiana's statutory punitive damage scheme, which attempts thereafter to confiscate this property at the point the judgment is paid, inescapably violates the Takings Clauses in both the Fifth Amendment to the United States Constitution ("nor shall private property be taken for public use, without just compensation") and Article 1, Section 21, of the Indiana Constitution ("No person's property shall be taken by law").

Because I disagree with the majority's belief that Cheatham's judgment is not property, I likewise reject its resulting conclusion that the Indiana punitive damage statute does not violate the Uniform and Equal Taxation Clause, Article 10, Section 1 of the Indiana Constitution. With respect to the Cheatham's claim that the statutory scheme violates Article 1, Section 21, of the Indiana Constitution, which prohibits the State from demanding the particular services of her attorney without just compensation, I agree and would adopt the analysis and conclusions of Judges Najam, Sharpnack, and Riley of our Court of Appeals. *Cheatham v. Pohle,* 764 N.E.2d 272, 277–81 (Ind.Ct.App.2002).

RUCKER, J., concurs.